SCOTT N. SCHOOLS, SC SBN 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
EDWARD A. OLSEN, CSBN 214150
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-6915
   FAX: (415) 436-6927

Attorneys for Respondents

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| QIN CHEN,<br><br>        Petitioner,<br><br>   v.<br><br>MICHAEL CHERTOFF, Secretary of Department of Homeland Security; EMILIO T. GONZALEZ, Director of the U.S. Citizenship and Immigration Services; CHRISTINA POULOS, Acting Director of USCIS, California Service Center; and ROBERT S. MULLER, Director of Federal Bureau of Investigation,<br><br>        Respondents. | No. C 07-2188 JSW |

DECLARATION OF F. GERARD HEINAUER

DECLARATION OF F. GERARD HEINAUER

F. GERARD HEINAUER, pursuant to 28 U.S.C. § 1746, declares the following:

1. I am employed by the Department of Homeland Security ("DHS"), Citizenship and Immigration Services Division ("USCIS"), as the Director of the Nebraska Service Center in Lincoln, Nebraska. It is in that capacity and based upon reasonable inquiry and my knowledge, information and belief that I provide this declaration.

2. The Director of USCIS is a named defendant in the case <u>Qin Chen v. Chertoff, et al.</u>, 07-02188, presently pending in the United States District Court for the Northern District of California. Plaintiff is a citizen of the People's Republic of China assigned alien registration number A98 463 498, who seeks to have her pending Form I-485, Application for Adjustment of Status, adjudicated.

3. Plaintiff filed her Form I-485 at the California Service Center on May 3, 2005, through a Maryland attorney of record who has not withdrawn from his representation of the alien before the agency. The Form I-485 was assigned receipt number WAC 05-154-52592. Due to a shift in workloads at the Service Centers, Plaintiff's application was transferred to the

Nebraska Service Center on March 2, 2007, and remains pending.

4. Plaintiff's adjustment of status application is based on a Form I-140 immigrant visa petition for alien worker on March 11, 2004, by Plaintiff, as a self-petitioner. The visa petition was approved March 21, 2005. The goal of the I-140 and I-485 filings is to obtain lawful permanent resident ("green card") status for Plaintiff and any qualified dependent spouse or child through his employment in the United States.

5. The approved labor certification was filed with USCIS along with a Form I-140 immigrant visa petition for alien worker on March 11, 2004, by Plaintiff, as a self-petitioner.

6. General requirements for employment-based adjustment of status applications are that the alien is the beneficiary of an approved I-140 visa petition (or is the spouse or child of an alien who has been granted employment-based adjustment of status), is in lawful immigration status, has a visa number immediately available under the annual per-country and preference category quota, and is not inadmissible to the United States under listed statutory grounds that include

health-related, criminal, and national security provisions.

7. Plaintiff's application for adjustment of status is ready to be adjudicated except that her background and security check has not been completed by the Federal Bureau of Investigation. When Plaintiff's background check is completed, Plaintiff's case can be adjudicated.

8. The attached Fact Sheet explains the different types of background and security checks relevant to the statutory requirement that the alien be admissible to the United States that must be completed prior to adjudication of Form I-485.

9. When an alien applies for adjustment of status, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the immigration benefit and that he or she is not a risk to national security or public safety. In addition to records checks against DHS's own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS)

that contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies, such as the Central Intelligence Agency (CIA), FBI, other divisions of the United States Department of Justice, Department of State, DHS/U.S. Customs and Border Protection (CBP), and other DHS agencies (IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity); and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS.

10. These law enforcement checks have revealed significant derogatory information on various alien applicants for immigration benefits, including applicants seeking permanent residency, which has resulted in the alien being found ineligible for the benefit and USCIS's denial of the application. Where applicable, the information has also resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States following a final order of removal. In many instances, the disqualifying information on the alien has been

discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone.

11. Since the terrorist attacks of September 11, 2001, the need to conduct more rigorous and thorough background checks on aliens who are seeking immigration status in the United States has required procedures that sometimes result in individuals not receiving their documents and benefits as quickly as in the past. In order to ensure national security and public safety, as well as to reduce the waiting time for adjudication and documentation of lawful status, USCIS is currently working with DOJ, DHS, and ICE to develop and implement improved procedures that will ensure that all of the background checks are completed and the results considered as quickly as possible. However, the public safety requires USCIS to make certain that the checks have been done before it adjudicates any application or petition and before it issues any immigration status documents to such persons.

12. USCIS will continue to perform any outstanding background and security checks as expeditiously as possible to help ensure that no eligible alien must wait longer than is reasonably necessary to receive a

decision on his or her application or petition and to receive evidence of his or her immigration status.

13. The fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated. Plaintiff was fingerprinted on December 10, 2005 and April 10, 2007. Rescheduling of fingerprints is done to ensure that the fingerprint checks remain current and that the cases will be adjudication-ready once the security check is completed.

14. For Plaintiff's application, the preliminary IBIS checks have been completed. Remaining IBIS checks are performed by the officer at the time of final adjudication if deemed necessary.

15. Since 9/11, USCIS has submitted millions of name check requests to the FBI, thus taxing that agency's resources and creating a backlog in FBI's performance of complete security checks.

16. Plaintiff's name check request was electronically submitted to the FBI on May 13, 2005, less than two weeks after receipt of her application to adjust status. The FBI electronically acknowledged receipt of the name check request on May 18, 2005. The name check remains pending.

17. There are five USCIS regional Service or Benefit Centers throughout the United States, each of which has jurisdiction over certain applications and petitions filed by persons or companies within its respective geographic jurisdiction, and/or exclusive nationwide jurisdiction over other types of applications. These Centers adjudicate cases on a mail-in basis only; they do not conduct in-person interviews. Employment-based adjustment of status cases like Plaintiffs' are handled at the Nebraska and Texas Service Centers.

18. By statute, only about 140,000 aliens and their derivative relatives can get green cards through employment-based categories during each fiscal year, with percentage limits set by Congress per country and within each preference category. China, India, Mexico, and the Philippines are frequently oversubscribed, and numbers are generally more available in the first and second employment-based preferences (aliens of extraordinary or exceptional ability and advanced degree professionals) than in the third preference (skilled workers with 2 years of experience or training and professionals with a baccalaureate degree).

19. Unused visa numbers under the annual quota do not carry over from one fiscal year to the next. Every attempt

is made to maximize number use under the annual numerical limit. These visa numbers are tracked and issued by the Department of State. The priority date for visa number purposes in Plaintiff's case is the date of filing the labor certification: March 11, 2004.

20. The Nebraska Service Center currently has approximately 73,135 employment-based Form I-485 adjustment of status cases pending, about 17,741 of which are still awaiting completion of FBI name checks before they can be adjudicated. Of an additional 81,970 (estimated) pending asylum/refugee-base Form I-485 adjustment of status cases, there are approximately 10,340 awaiting responses on FBI name checks. Of a total figure of 84,355 naturalization filings being processed at the Nebraska Service Center, there are approximately 21,728 awaiting responses on FBI name checks. Cases in which the pending FBI name check is the only impediment to final adjudication are audited on a weekly basis in order to identify those in which a response from the FBI has been received. Once the security checks are completed, the case can be evaluated for visa number availability.

21. Service Centers have a process for expediting processing of certain applications and petitions. However, it is important to note that whenever a particular application or petition receives expedited processing and is moved up in the adjudications queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date. If, for example, USCIS asks the FBI to expedite a case, this action comes at the expense of other name check cases, many of which have been pending since December 2002, because FBI would have fewer resources with which to work the other pending cases. USCIS is currently limited in the number of expedite requests that can be made to the FBI each week, and there is a backlog even in submitting the expedite requests for cases that have been deemed to meet expedite criteria.

22. In order to address in a consistent and fair manner the increasing number of mandamus actions filed nationwide by aliens awaiting decisions on their petitions and applications, USCIS issued specific guidelines for requesting an expedited name check from the FBI. Expedited processing may be pursued in cases at USCIS's discretion for military deployment, age-out cases and applications affected by sunset provisions, significant

and compelling reasons such as critical medical conditions, loss of social security benefits or other subsistence, severe financial loss, extreme emergent situation, humanitarian situation, nonprofit status of requesting organization in furtherance of the cultural and social interest of the United States, Department of Defense/National Interest requests from official U.S. government entity, USCIS error, or compelling interest of USCIS.

23. To my knowledge, Plaintiff has not made a formal request for expedited processing. Expedite requests are determined on a case-by-case basis. Plaintiff states in her complaint that she wishes to have her green card quickly because she has "been greatly damaged" regarding her immigration status in the United States. This is a common reason for aliens to desire lawful permanent resident status and does not generally, as a single factor, constitute a special circumstance that would justify emergency or expedited processing. Other common reasons include inability of non-lawful permanent residents or non-U.S. citizens to: work without restriction, acquire time for naturalization eligibility, get grant funds for research, apply for desirable jobs, qualify for

scholarships or fellowships, or get in-state tuition for self, spouse or dependents.

24. Another common factor in the many mandamus lawsuits filed against USCIS and involving pending FBI name checks are the plaintiffs' claims that they made repeated status inquiries about their case to USCIS, FBI, Congress, and the White House. While multiple status inquires show the applicants' frustration with the pace of the processing of their applications, the inquiries, and mandamus actions, increase the workload of the FBI or USCIS, rather than having the effect of faster or special treatment of the subject applications.

25. Most applicants for adjustment of status may apply for and be granted (usually in one-year increments) work authorization documents and advance parole documents to enable them to travel abroad while their application is pending. Incident to her status as a pending adjustment applicant, Plaintiff currently holds a work authorization document permitting her to work for any employer she wishes valid through July 17, 2008. Plaintiff does not currently possess an advance parole travel document, nor does she have an application pending with USCIS to obtain a travel document.

26. The Nebraska Service Center is processing Ms. Chen's adjustment of status application in accordance with standard procedures.

I declare under penalty of perjury that the foregoing is true and correct.

    Executed at Lincoln, Nebraska
    on this 31st day of October, 2007.

                                         F. Gerard Heinauer
                                         Director
                                         Nebraska Service Center

ATTACHMENT

*Press Office*
U.S. Department of Homeland Security



U.S. Citizenship and Immigration Services

# Fact Sheet

April 25, 2006

## Immigration Security Checks—How and Why the Process Works

**Background**

All applicants for a U.S. immigration benefit are subject to criminal and national security background checks to ensure they are eligible for that benefit. U.S. Citizenship and Immigration Services (USCIS), the Federal agency that oversees immigration benefits, performs checks on every applicant, regardless of ethnicity, national origin or religion.

Since 2002, USCIS has increased the number and scope of relevant background checks, processing millions of security checks without incident. However, in some cases, USCIS customers and immigrant advocates have expressed frustration over delays in processing applications, noting that individual customers have waited a year or longer for the completion of their adjudication pending the outcome of security checks. While the percentage of applicants who find their cases delayed by pending background checks is relatively small, USCIS recognizes that for those affected individuals, the additional delay and uncertainty can cause great anxiety. Although USCIS cannot guarantee the prompt resolution of every case, we can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin.

USCIS strives to balance the need for timely, fair and accurate service with the need to ensure a high level of integrity in the decision-making process. This fact sheet outlines the framework of the immigration security check process, explaining its necessity, as well as factors contributing to delays in resolving pending cases.

**Why USCIS Conducts Security Checks**

USCIS conducts security checks for all cases involving a petition or application for an immigration service or benefit. This is done both to enhance national security and ensure the integrity of the immigration process. USCIS is responsible for ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens by screening out people who seek immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. These investigations require time, resources, and patience and USCIS recognizes that the process is slower for some customers than they would like. Because of that, USCIS is working closely with the FBI and other agencies to speed the background check process. However, USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take.

Immigration Security Checks—How and Why the Process Works

**How Immigration Security Checks Work**

To ensure that immigration benefits are given only to eligible applicants, USCIS adopted background security check procedures that address a wide range of possible risk factors. Different kinds of applications undergo different levels of scrutiny. USCIS normally uses the following three background check mechanisms but maintains the authority to conduct other background investigations as necessary:

- **The Interagency Border Inspection System (IBIS) Name Check**— IBIS is a multiagency effort with a central system that combines information from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns. USCIS can quickly check information from these multiple government agencies to determine if the information in the system affects the adjudication of the case. Results of an IBIS check are usually available immediately. In some cases, information found during an IBIS check will require further investigation. The IBIS check is not deemed completed until all eligibility issues arising from the initial system response are resolved.

- **FBI Fingerprint Check**—FBI fingerprint checks are conducted for many applications. The FBI fingerprint check provides information relating to criminal background within the United States. Generally, the FBI forwards responses to USCIS within 24-48 hours. If there is a record match, the FBI forwards an electronic copy of the criminal history (RAP sheet) to USCIS. At that point, a USCIS adjudicator reviews the information to determine what effect it may have on eligibility for the benefit. Although the vast majority of inquiries yield no record or match, about 10 percent do uncover criminal history (including immigration violations). In cases involving arrests or charges without disposition, USCIS requires the applicant to provide court certified evidence of the disposition. Customers with prior arrests should provide complete information and certified disposition records at the time of filing to avoid adjudication delays or denial resulting from misrepresentation about criminal history. Even expunged or vacated convictions must be reported for immigration purposes.

- **FBI Name Checks**—FBI name checks are also required for many applications. The FBI name check is totally different from the FBI fingerprint check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement. Initial responses to this check generally take about two weeks. In about 80 percent of the cases, no match is found. Of the remaining 20 percent, most are resolved within six months. Less than one percent of cases subject to an FBI name check remain pending longer than six months. Some of these cases involve complex, highly sensitive information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS concerning a match, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

For most applicants, the process outlined above allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. Most cases proceed forward without incident. However, due to both the sheer volume of security checks USCIS conducts, and the need to ensure that each applicant is thoroughly screened, some delays on individual applications are inevitable. Background checks may still be considered pending when either the FBI or relevant agency has not provided the final response to the background check or when the FBI or agency has provided a response, but the response requires further investigation or review by the agency or USCIS. Resolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even

**Immigration Security Checks—How and Why the Process Works**

---

several years to resolve. Every USCIS District Office performs regular reviews of the pending caseload to determine when cases have cleared and are ready to be decided. USCIS does not share information about the records match or the nature or status of any investigation with applicants or their representatives.

*Office of Communications*
**U.S. Department of Homeland Security**



**U.S. Citizenship and Immigration Services**

February 20, 2007

# USCIS Update

### USCIS CLARIFIES CRITERIA TO EXPEDITE FBI NAME CHECK
*Federal Litigation Removed as Sole Basis to Expedite Check*

WASHINGTON – U.S. Citizenship and Immigration Services (USCIS) is no longer routinely requesting the FBI to expedite a name check when the only reason for the request is that a mandamus (or other federal court petition) is filed in the case.

USCIS may continue to request an expedited FBI name check if the case meets one of the other approved criteria, including:

1. Military deployment,
2. Age-out cases not covered under the *Child Status Protection Act*, and applications affected by sunset provisions such as diversity visas,
3. Significant and compelling reasons, such as critical medical conditions, and
4. Loss of social security benefits or other subsistence at the discretion of the USCIS District Director.

The FBI name check is an invaluable part of the security screening process, ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens. USCIS also requests an FBI name check to screen out people who seek immigration benefits improperly or fraudulently and ensure that only eligible applicants receive benefits.

Information about the FBI name check is available on the USCIS website at http://www.uscis.gov or by calling the USCIS National Customer Service Center toll free at 1-800-375-5283.

–USCIS –

On March 1, 2003, U.S Citizenship and Immigration Services became one of three legacy INS components to join the U.S. Department of Homeland Security. USCIS is charged with fundamentally transforming and improving the delivery of immigration and citizenship services, while enhancing our nation's security.

www.uscis.gov